**Robert SPURLOCK and Ronnie Marshall, Plaintiff,**

v.

**Lawrence Ray WHITLEY, et al., Defendant.**

Nos. 3:96–0926, 3:96–0927.

United States District Court, M.D. Tennessee, Nashville District.

July 17, 1997.

George Whitney Kemper, Nashville, TN, Rick Halprin, Chicago, IL, Nathan Diamond–Falk, Chicago, IL, for Plaintiffs.

Mary M. Bers, Nashville, TN, J. Graham Matherne, Nashville, TN, Henry Apple, Chattanooga, TN, Darrell Gene Townsend, Nashville, TN, William Ronald Wright, Gallatin, TN, for Defendants.

*MEMORANDUM*

CAMPBELL, District Judge.

### I. *Introduction*

This is an action to recover for the alleged wrongful investigation, prosecution, conviction, incarceration and reprosecution of Plaintiffs for murder based on alleged fabricated evidence and perjured testimony by Defendants. This case raises issues that challenge the integrity of criminal justice.

Pending before the Court are Amended Motion To Dismiss On Behalf Of Defendant Coarsey (Docket No. 35). Amended Motion To Dismiss Or, In The Alternative, Motion For Summary Judgment Of Defendant City Of Hendersonville, Tennessee (Docket No. 41), Restated Motion To Dismiss Of Defendant Danny Satterfield (Docket No. 44), Restated Motion To Dismiss Of Defendant Sumner County, Tennessee (Docket No. 46), Amended Motion To Dismiss For Failure To State A Claim Upon Which Relief May Be Granted By Defendants Whitley And Kitchen (Docket No. 48), Motion Of Defendant City Of Hendersonville To File First Amended Motion To Dismiss To Add Argument Based Upon Statute Of Limitations Defense (Docket No. 52), and Motion To File Plaintiffs' Response Instanter (Docket No. 56).

For the reasons set forth below, the Amended Motion To Dismiss On Behalf Of Defendant Coarsey (Docket No. 35) is DENIED, the Amended Motion To Dismiss Or, In The Alternative, Motion For Summary Judgment Of Defendant City Of Hendersonville, Tennessee (Docket No. 41) is GRANTED in part and DENIED in part, the Restated Motion To Dismiss Of Defendant Danny Satterfield (Docket No. 44) is GRANTED in part and DENIED in part, the Restated Motion To Dismiss Of Defendant Sumner County, Tennessee (Docket No. 46) is DENIED, the Amended Motion To Dismiss For Failure To State A Claim Upon Which Relief May Be Granted By Defendants Whitley And Kitchen (Docket No. 48) is GRANTED in part and DENIED in part, the Motion Of Defendant City Of Hendersonville To File First Amended Motion To Dismiss To Add Argument Based Upon Statute Of Limitations Defense (Docket No. 52) is GRANTED, and the Motion To File Plaintiffs' Response Instanter (Docket No. 56) is GRANTED.

### II. *Factual Background*

Plaintiffs bring this consolidated action under 42 U.S.C. §§ 1981 and 1983 for violation of their rights under the First, Sixth and Fourteenth Amendments seeking damages and attorneys' fees. Plaintiffs have also brought malicious prosecution claims under state law. Named as Defendants are Sum-

ner County District Attorney Lawrence Ray Whitley, Sumner County Assistant District Attorney Jerry R. Kitchen, Hendersonville Police Officer John D. Coarsey, Sumner County Sheriffs Deputy Danny Satterfield, Henry Apple, Sumner County, Tennessee, and the City of Hendersonville, Tennessee. Plaintiffs allege the following facts in their Amended Complaint. On February 21,1989, the body of Lonnie Malone was discovered in Sumner County, Tennessee. (Amended Complaint, at ¶ 9 (Docket No. 32)). Malone had died as a result of multiple stab wounds. (*Id.*) The Sumner County Sheriff's Department undertook an investigation into Malone's death. (*Id.*) Among the officers assigned to the investigation were George Farmer and his subordinate, Danny Satterfield. (*Id.*) "Almost immediately, Farmer and Satterfield focused their investigation on Robert Spurlock and Ronnie Marshall." (Id.)

The day after Malone's body was discovered, the Sheriff's Department obtained a search warrant for Plaintiff Spurlock's home and automobiles. (Amended Complaint, at ¶ 10). No evidence was discovered linking Spurlock to the murder. (*Id.*) At the time the search warrant was executed, the Amended Complaint alleges:

> Spurlock told them he had an alibi and provided the name of an alibi witness. No attempt was made to investigate this claim. He also offered to take a polygraph. The offer was refused.

(*Id.*)

For the next two months, the Sheriff's Department allegedly was unable to link Spurlock or Marshall to the Malone homicide. (Amended Complaint, at ¶ 11). The Amended Complaint contends, however, that during this period of time, the Sheriff's Department had developed information linking persons other than Spurlock and Marshall to the Malone homicide. (*Id.*)

According to the Amended Complaint, District Attorney Whitley arranged and publicly announced the offer of a reward for information leading to the conviction or arrest of the person or persons responsible for the killing of Lonnie Malone. (Amended Complaint, at ¶ 12): After learning of the reward,

Hendersonville Police Officer John Coarsey "devised a scheme whereby he would obtain possession of and control over the reward money." (Amended Complaint, at ¶ 13). The Amended Complaint alleges that Officer Coarsey knew Defendant Henry Apple as "a drug user and a street 'informant.' " (*Id.*) On April 27, 1990, Officer Coarsey allegedly claimed that he received information from another "informant" that Defendant Apple had direct knowledge of the Malone homicide. (*Id.*)

At that time, Defendant Apple was allegedly being held in the Sumner County Jail for failure to pay child support. (Amended Complaint, at ¶ 14). According to the Amended Complaint, Officer Coarsey contacted Sumner County Sheriff's Deputy Satterfield and they both went to the Jail to interrogate Defendant Apple. (Amended Complaint, at ¶ 15). When confronted by Officer Coarsey and Deputy Satterfield, Defendant Apple allegedly denied any knowledge of the Malone homicide. (*Id.*)

Despite that denial, Officer Coarsey in the presence of Deputy Satterfield, continued to interrogate Defendant Apple. (*Id.*) It is alleged that Officer Coarsey:

> ... alternately threatened him with prosecution and offered him assistance for both him and his family if Apple would implicate Spurlock and Marshal in the Malone homicide in return. Additionally, Coarsey, in the presence of Satterfield, told Apple that if he would implicate Spurlock and Marshall, District Attorney General Ray Whitley would secure his release from the County Jail.

(*Id.*)

According to the Amended Complaint, Defendant Apple eventually "succumbed to both pressure and promise." (*Id.*) Because Defendant Apple was allegedly ignorant of any of the details developed through the investigation of the Malone homicide, Officer Coarsey and Deputy Satterfield "provided these details to Apple in order to effectuate his agreement to falsely implicate Spurlock and Marshall in the Malone homicide." (*Id.*)

Officer Coarsey and Deputy Satterfield then allegedly contacted District Attorney

Whitley and advised him of their success in coercing Defendant Apple to falsely implicate Plaintiffs Spurlock and Marshall in the Malone homicide. (Amended Complaint, at ¶ 16). After receiving this information, District Attorney Whitley allegedly went to the jail and met with Defendant Apple (*Id.*) District Attorney Whitley purportedly "assured Apple of his release from jail in exchange for falsely implicating Spurlock and Marshall." (*Id.*)

According to the Amended Complaint, Officer Coarsey, Deputy Satterfield and District Attorney Whitley arranged for a videotape interview with Apple "[a]fter assuring themselves that Apple had his story straight." (*Id.*) The tape was allegedly recorded on April 27, 1990, and contains direct conversations by Apple with District Attorney Whitley in the presence of Officer Coarsey and Deputy Satterfield concerning Whitley's promise to release Apple from custody. (Amended Complaint, at ¶¶ 16, 33(e)).

The Amended Complaint states that:

> After reviewing the events in the video and audio tapes of April 27, 1990 (Coarsey had made an audio tape with Apple prior to video tape), Whitley and Satterfield were not satisfied with Apple's performance. Whitley directed Satterfield to pressure Apple in an attempt to get him (Apple) to say he actually saw the killing (as opposed to the earlier statement provided to him by Coarsey and Satterfield in which he falsely states that on the night of the killing he saw Spurlock turn in a truck with blood on this shirt). (sic) Apple had also been told to say that prior to Spurlock's return, he had heard screams in the distance.

(Amended Complaint, at ¶ 17).

To aid in this effort, District Attorney Whitley purportedly told Deputy Satterfield he would not order Apple's release for a few days. (*Id.*) In the interim, District Attorney Whitley allegedly directed Assistant District Attorney Kitchen and Deputy Satterfield to attempt to induce Apple to say he saw the killing. (*Id.*) According to the Amended Complaint, Deputy Satterfield, Assistant District Attorney Kitchen, "and others at this time unknown to the Plaintiffs,"

told Apple that if he would say he saw the killing, he would be entitled to get the reward money. (*Id.*) The Amended Complaint states that this offer was made without Officer Coarsey's knowledge. (*Id.*)

Apple was allegedly still in jail as of April 29, 1990. (Amended Complaint, at ¶ 18). He "was visibly concerned that Whitley would not keep his agreement to secure his release in exchange for his providing false accusations against Spurlock and Marshall." (*Id.*) He allegedly explained these concerns to a jail guard who recorded the conversation. (*Id.*)

District Attorney Whitley, Assistant District Attorney Kitchen and Deputy Satterfield allegedly became aware of Apple's concerns, and abandoned their efforts to have Apple falsely state that he had actually seen the killing. (Amended Complaint, at ¶ 19). Instead, Whitley allegedly ordered Deputy Satterfield to create another tape in which Apple would falsely recount the facts as originally agreed to on April 27, 1990. (*Id.*) The purpose of the tape allegedly was to conceal Apple's conversations on April 27 and April 29. (*Id.*) To effect this aspect of the conspiracy, "Satterfield asked Apple on the tape of April 30, 1990, when was the first time he ever told anybody about his knowledge of the Malone homicide," and "[p]ursuant to his agreement with the other conspirators, Apple falsely replied that the first time he had made the statement was on April 30, 1990." (*Id.*)

District Attorney Whitley allegedly then arranged for Apple's release from jail by dispatching one of his assistants, Salley Wade Brown, to Judge Jane Wheatcraft, the judge who had incarcerated Apple. (*Id.*) Brown "apparently unknowingly represented to Judge Wheatcraft that Apple was being released because of 'safety' concerns." (*Id.*)

On May 9, 1990, District Attorney Whitley and Assistant District Attorney Kitchen allegedly presented Apple's false accusations to a Sumner County Grand Jury, which indicted Spurlock and Marshall for the crime of first degree murder in the killing of Lonnie Malone. (*Id.*)

According to the Amended Complaint, in an effort to insure Marshall's conviction:

> Whitley and Kitchen threatened Priscilla Blakemore with criminal prosecution if she did not falsely state that she had seen Marshall on the night of the killing with mud all over his clothes. Blakemore was also instructed to say that Marshall had 'confessed' to her on the night of the Malone killing. Blakemore succumbed to the prosecution (sic) applied by Whitley and Kitchen and falsely testified at the first trials of Marshall and Spurlock.

(Amended Complaint, at ¶ 20).

During the proceedings against Plaintiffs Spurlock and Marshall, District Attorney Whitley and Assistant District Attorney Kitchen allegedly falsely represented to counsel for Spurlock and Marshall and the state court that Apple had made no statements before the April 30, 1990 statement, and withheld other information they were required by law to provide to defense counsel. (Amended Complaint, at ¶ 36).

According to the Amended Complaint, the initial phase of the conspiracy was successful in that Plaintiff Marshall was convicted, on September 27, 1990, of Murder in the First Degree as a result of the false testimony of Apple and Blakemore. (Amended Complaint, at ¶¶ 21, 22). Plaintiff Marshall was sentenced to life in prison. (*Id.*)

During Plaintiff Spurlock's trial, Deputy Satterfield, as part of an agreement with District Attorney Whitley and Assistant District Attorney Kitchen, allegedly testified falsely in an effort to bolster Apple's credibility, which had been called into question during cross examination. (Amended Complaint, at ¶ 37(c)). Plaintiff Spurlock was convicted on October 17, 1990 by a Sumner County Jury of Murder in the First Degree, and was sentenced to life in prison. (Amended Complaint, at ¶ 22).

Sometime after the jury verdict in Plaintiff Spurlock's case, defense counsel allegedly obtained Apple's statements of April 27, and April 29, 1990. (Amended Complaint, at ¶ 41 ). Both Plaintiffs Spurlock and Marshall allegedly filed post-trial motions seeking new trials, alleging prosecutorial miscon-

duct and violations of their constitutional rights. (Amended Complaint, at ¶ 23). The Amended Complaint alleges that the conspiracy was then "enlarged to include efforts by the named conspirators and others presently unknown to the Plaintiffs to defeat Spurlock and Marshall's attempts to gain new trials." (*Id.*) This activity allegedly was an extension of the original agreement of April 27, 1990 among the named conspirators. (*Id.*)

According to the Amended Complaint, Plaintiff Marshall's motion for a new trial was denied on November 6, 1990. (*Id.*) Plaintiff Spurlock's motion for new trial was allegedly more comprehensive than Marshall's in that Spurlock presented to the court "evidence of the suppressed video and audio tapes of April 27 and April 29, 1990 and other material suppressed primarily by Whitley and Kitchen." (*Id.*) Plaintiff Spurlock's motion was denied on January 11, 1991. (*Id.*)

The Amended Complaint states that the Plaintiffs' appeals and "the conspiratorial activity directed toward defeating those appeals" continued. (Amended Complaint, at ¶ 24). During the appellate process, Apple allegedly engaged in criminal activity and was arrested "from time to time." (Amended Complaint, at ¶ 43). He was allegedly advised "by law enforcement conspirators that despite his arrests, if he stuck to the story provided to him by Satterfield, Whitley and Kitchen on April 27, 1990, he would remain out of the penitentiary." (*Id.*) District Attorney Whitley allegedly "directed his assistants to provide Apple with lenient dispositions" during this period. (*Id.*) In addition, District Attorney Whitley and Deputy Satterfield allegedly "gave Apple 'hush' money instructing him to keep his mouth shut." (*Id.*)

On December 1, 1992, Plaintiff Marshall won his appeal and a new trial was ordered. (Amended Complaint, at ¶ 24). In May of 1993, Plaintiff Spurlock won his appeal and a new trial was ordered. (*Id.*) The Amended Complaint states that in the Spurlock appeal, the Tennessee Court of Criminal Appeals held that Apple and Deputy Satterfield had committed perjury "suborned by Whitley." (Amended Complaint, at ¶ 44(b)).

According to the Amended Complaint, District Attorney Whitley recused himself and another prosecutor was appointed on September 9, 1993. (Amended Complaint, at ¶ 25). District Attorney Whitley "agreed with the law enforcement conspirators that he would recuse himself as prosecutor so he could appear in the second trial as a witness and through perjured testimony bolster Apple's credibility." (Amended Complaint, at ¶ 44(f)).

In January, 1995, "Whitley and Apple, pursuant to their agreements of April 27, 1990, falsely testified against Spurlock." (Amended Complaint, at ¶ 25) On January 13, 1995, a Sumner County jury, allegedly based on that testimony, found Plaintiff Spurlock guilty of second degree murder. (*Id.*) On March 31, 1995, Plaintiff Spurlock was sentenced to twenty years at 30 percent. (*Id.*) After his motion for new trial was denied, Plaintiff Spurlock appealed. (*Id.*)

According to the Amended Complaint, on July 25, 1995, District Attorney Whitley, "pursuant to the conspiratorial plan, made Marshall an 'offer he could not refuse.'" (*Id.*) District Attorney Whitley allegedly offered Plaintiff Marshall, through his attorney, a "best interest plea" in which Marshall would not have to admit guilt for the killing of Malone, and would receive a ten year probationary sentence. (*Id.*) Plaintiff Marshall "thoroughly cowed by having been falsely arrested, convicted on perjured testimony and imprisoned for a crime he did not commit, considered the offer, knowing that Whitley would falsely testify against him." (Amended Complaint, at ¶ 46). Marshall allegedly accepted the offer "rather than risk going back to prison for a crime he did not commit." (Amended Complaint, at ¶ 46). This decision was allegedly influenced by Spurlock's second conviction and the perjured testimony elicited at that trial. (*Id.*)

On July 25, 1995, Plaintiff Marshall entered his plea, and began serving an alternative ten-year sentence, which would end in the year 2005. (Amended Complaint, at ¶¶ 25, 48).

During the pendency of Plaintiff Spurlock's appeal and Plaintiff Marshall's sentence, in September, 1995, the Amended Complaint states that a new investigation was launched by a Sheriff's detective, Lieutenant Bob Barker. (Amended Complaint, at ¶ 26). The investigation allegedly led to the confession of Malone's actual killers who were not associated with Spurlock. (Amended Complaint, at ¶ 44(k)).

On March 6, 1996, in open court in Sumner County, "Spurlock's and Marshall's convictions were vacated, and new trials were ordered." (Amended Complaint, at ¶ 26).

According to the Amended Complaint, District Attorney Whitley had learned, some time prior to that date, that the new prosecutor was going to take this action. (*Id.*) District Attorney Whitley is alleged to have made statements to the media on March 4 and March 6, 1996, and in September, 1996, denying any unethical conduct in connection with the prosecution of the Plaintiffs. (Amended Complaint, at ¶¶ 28, 29).

### III. *Analysis*

#### A. *Motion To Dismiss Standards*

██ The Court may grant a motion to dismiss under Rule 12(b) only if it determines that the Plaintiffs can prove no set of facts in support of their claims that would entitle them to relief. *Yeary v. Goodwill Industries–Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir.1997). In making this determination, the Court must construe the complaint in the light most favorable to the Plaintiffs. *Briggs v. Ohio Elections Commission*, 61 F.3d 487, 493 (6th Cir.1995). The purpose of a motion to dismiss is to allow the Defendants to test whether, as a matter of law, Plaintiffs are entitled to relief even if everything alleged in the Amended Complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir.1993).

#### B. *Statute of Limitations*

All Defendants argue that Plaintiffs' Section 1983 claims are barred by the statute of limitations. The statute of limitations for Plaintiffs' claims under Section 1983, as well as Section 1981, is that stated in Tennessee Code Annotated Section 28–3–104(a)(3). *See, e.g. Merriweather v. City of Memphis*, 107 F.3d 396, 398 (6th Cir.1997); *Jackson v.*

*Richards Medical Co.*, 961 F.2d 575, 578 (6th Cir.1992). That statute provides that personal tort actions based on the federal civil rights statutes must be brought within one year after the cause of action accrued. This action was filed on October 9, 1996.

Plaintiffs contend that the statute began to run when their convictions were vacated in March, 1996, and therefore, the limitations period did not expire until March, 1997. Defendants argue, on the other hand, that the statute of limitations began to run when the Tennessee Court of Criminal Appeals granted Plaintiff Spurlock a new trial in May, 1993.

Both sides cite the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) in arguing their respective positions. In *Heck*, the Supreme Court upheld the dismissal of plaintiff's Section 1983 action based on malicious prosecution, essentially because the claim was premature.[1] In reaching its decision, the Court held that in Section 1983 actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, the plaintiff must prove "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." 512 U.S. at 486–87, 114 S.Ct. at 2372. The conviction of the plaintiff in *Heck* was on appeal, and thus, he was unable to satisfy this requirement.

The Court explained the effect of its holding on statute of limitations calculations as follows:

> Under our analysis, the statute of limitations poses no difficulty while the state challenges are being pursued, since the § 1983 claim has not yet arisen. Just as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor ... so also a § 1983 cause of action for damages attributable to an unconstitution-al conviction or sentence does not accrue until the conviction or sentence has been invalidated.

512 U.S. at 489–90, 114 S.Ct. at 2374 (citations omitted).

Defendants essentially argue that Plaintiffs' convictions were invalidated, for purposes of the *Heck* analysis, when the Tennessee Court of Criminal Appeals overturned Plaintiffs' convictions after their first trials. Plaintiff Marshall's conviction was overturned in December, 1992, and Plaintiff Spurlock's conviction was overturned in May, 1993. Thus, Defendants argue, the limitations period ran on Plaintiffs' claims in May, 1994 at the latest.

The flaw in Defendants' argument, however, is that the State did not end its effort to prosecute Plaintiffs after their convictions were overturned by the appeals court. Plaintiff Spurlock was retried, and Plaintiff Marshall resolved the charges against him by entering a plea bargain with prosecutors.

■ The Third Circuit Court of Appeals addressed the statute of limitations issue in a similar situation in *Smith v. Holtz*, 87 F.3d 108 (3rd Cir.1996). In *Smith*, an appeals court overturned plaintiff's conviction and remanded for a new trial. 87 F.3d at 110. Before the retrial, however, the charges were dismissed based on newly discovered evidence of prosecutorial misconduct. *Id.* The defendants argued that the statute of limitations began to run when plaintiff's conviction was overturned by the appeals court, and not when the charges were subsequently dismissed. *Id.*

In rejecting the defendants' argument, the court explained:

> A claim by a defendant in an ongoing criminal prosecution which necessarily challenges the legality of a future conviction on a pending criminal charge lies at the intersection of the federal habeas corpus statute and the Civil Rights Act of 1871. If such a claim could proceed while criminal proceedings are ongoing, there would be a potential for inconsistent deter-

---

1. Defendant Coarsey argues that the decision in Heck should not apply retroactively. This argument is without merit. *See, e.g., Schilling v.* *White*, 58 F.3d 1081, 1085 n. 4 (6th Cir.1995); *Abella v. Rubino*, 63 F.3d 1063, 1064 (11th Cir. 1995).

minations in the civil and criminal cases and the criminal defendant would be able to collaterally attack the prosecution in a civil suit. In terms of the conflicts which *Heck* sought to avoid, there is no difference between a conviction which is outstanding at the time the civil rights action is instituted and a potential conviction on a pending charge that may be entered at some point thereafter.

Because of these concerns, we hold that a claim that, if successful, would necessarily imply the invalidity of a conviction on a pending criminal charge is not cognizable under § 1983 ... It necessarily follows that so long as success on such a claim would necessarily imply the invalidity of a conviction in the pending criminal prosecution, *such a claim does not accrue so long as the potential for a judgment in the pending criminal prosecution continues to exist.*

87 F.3d at 113.

■ The Court finds this reasoning persuasive. If Plaintiffs had sought to bring their Section 1983 claims after the appeals court overturned their convictions, but while the charges against them were still pending, no doubt the Defendants would have argued that those claims were premature because there still existed a potential for a judgment against the Plaintiffs. In fact, Plaintiff Spurlock was convicted after a second trial. Under these circumstances, the Court concludes that the limitations period for Plaintiffs' cause of action did not begin until their convictions were vacated in March, 1996, and their prosecutions terminated.[2] Therefore, Plaintiffs filed this action within the applica-

ble one-year limitations period, in October, 1996.

## C. *Failure to State a Claim*

### (1) *Nature of the Constitutional Violation Alleged*

In order to succeed in proving a Section 1983 claim, a plaintiff must establish that: (1) he was deprived of a right secured by the federal Constitution or laws of the United States; and (2) the deprivation was caused by a person acting under color of state law. *See, e.g., Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155–57, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978). *Street v. Corrections Corp. of America,* 102 F.3d 810, 814 (6th Cir.1996).

Defendants Whitley and Kitchen argue that Plaintiffs may not bring a Section 1983 claim for malicious prosecution because they have not alleged a violation of the constitutional right that applies to that conduct.

■ Count One of the Amended Complaint is titled "Conspiracy To Maliciously Prosecute And Convict Spurlock And Marshall." (Amended Complaint, at 11 (Docket No. 32)). Plaintiffs specifically allege in Count One that they were denied their rights "secured under the Constitution of the United States to petition the Government for redress of grievances to a fair trial, and effective assistance of counsel, under the First, Sixth and Fourteenth Amendments of the United States" (Amended Complaint, at ¶ 50 (Docket No. 32)).

Defendants rely on *Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) to support their argument that these allegations are insufficient. In *Albright,* the

---

**2.** In their reply briefs, Defendants cite a Second Circuit decision in *Pinaud v. County of Suffolk,* 52 F.3d 1139 (2nd Cir.1995) to support their statute of limitations argument. The Court concludes, however, that the *Pinaud* decision is distinguishable. The plaintiff in *Pinaud* was subject to two separate prosecutions by the state, the first one began in 1984, and ended when plaintiff's conviction was vacated in July, 1987. 52 F.3d at 1144–45. Unlike the facts in this case, the state did not decide to reprosecute the plaintiff in *Pinaud* until February, 1988. *Id.* The plaintiff filed suit in 1991, after the second prosecution ended in October, 1988, alleging constitu-

tional violations arising out of both prosecutions. 52 F.3d at 1144–45. The court in *Pinaud* found that statute of limitations barred his claims arising out of the first prosecution. 52 F.3d at 1156–58.

As noted above, the state did not abandon its prosecution of Plaintiffs in this case after the appeals court overturned their initial convictions. Therefore, unlike the situation in *Pinaud,* this case does not involve two separate prosecutions, and the statute of limitations began to run only after the state vacated Plaintiffs' convictions and abandoned its prosecution of Plaintiffs in March, 1996.

Supreme Court held that arrest without probable cause does not violate the substantive due process clause of the Fourteenth Amendment. The Court left open the question, however, of whether this conduct may constitute a violation of the Fourth Amendment. 510 U.S. at 273–77, 114 S.Ct. at 813–14. Accordingly, to the extent Plaintiffs seek to bring the malicious prosecution claim pursuant to the substantive due process clause of the Fourteenth Amendment, the claim must be dismissed.

In their response, however, Plaintiffs do not argue that the malicious prosecution claim is a substantive due process violation. Instead, Plaintiffs contend that the failure to allege a Fourth Amendment violation was an "inadvertent omission," and request permission to amend their complaint to add a Fourth Amendment claim.

The Court notes that, since *Albright*, the Sixth Circuit has recognized a Section 1983 claim for malicious prosecution and unlawful arrest alleging violations of the Fourth Amendment. *See Smith v. Williams*, 78 F.3d 585 (Table), 1996 WL 99329 (6th Cir. March 6, 1996). The Court is of the opinion that Plaintiffs should be allowed to amend their Amended Complaint to add this claim. Accordingly, Plaintiffs shall file, on or before July 28, 1997, a second amended complaint adding the Fourth Amendment claim.[3]

### (2) *Factual Linkage Between Vacating the Convictions and Unlawful Conduct*

■ Relying on *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), Defendants Whitley and Kitchen also argue that Plaintiffs' Section 1983 malicious prosecution claims must fail because they have not alleged a link between the invalidation of their convictions and Defendants' allegedly unlawful conduct.

In *Heck*, the Court held that in Section 1983 actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, the plaintiff must prove "that the conviction or sentence has been reversed on direct appeal, expunged by

executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." 512 U.S. at 487, 114 S.Ct. at 2372.

Defendants argue that the "factual linkage" required by *Heck* is absent because Plaintiffs' convictions were vacated due to the discovery of new evidence and not because of the allegedly unlawful conduct of Defendants. The Court need not decide if the *Heck* decision actually requires this "factual linkage" because the Amended Complaint sufficiently alleges a link between Defendants' unlawful conduct and the ultimate vacating of Plaintiffs' convictions.

The Amended Complaint alleges that, rather than conduct a thorough investigation of the Malone homicide, the individual law enforcement defendants conspired to prosecute the Plaintiffs with false testimony. It was only after a new investigation was launched by another Sheriff's detective that Malone's confessed murderers were actually apprehended, and Plaintiffs' convictions were vacated. Simply put, the Amended Complaint alleges that, if not for Defendants' unlawful conduct, the investigation would have led to Malone's actual killers, and discovery of the actual killers led to the vacating of Plaintiffs' convictions. Accordingly, the Court concludes that Plaintiffs' claims should not be dismissed based on a lack of factual linkage.

### D. *Marshall's Guilty Plea As Waiver Of Claims*

Defendants argue that Plaintiff Marshall's action should be dismissed because he waived his claims by making a "best interest" guilty plea in the state court after his first conviction was overturned on appeal.

■ As Defendants note, the preclusive effect of a guilty plea in a subsequent Section 1983 action is determined by state law. *Haring v. Prosise*, 462 U.S. 306, 103 S.Ct. 2368,

---

**3.** The Court is not ruling on the viability of Plaintiffs' claims based on Fourteenth Amendment procedural due process, or the other consti-

tutional provisions cited in Plaintiffs' Amended Complaint.

76 L.Ed.2d 595 (1983). Defendants admit that the Tennessee Court of Appeals, in *Grange Mutual Casualty Co. v. Walker,* 652 S.W.2d 908, 910 (Tenn.Ct.App.1983), held that a plea of guilty is "generally not conclusive on the issues in a subsequent civil action." Defendants argue, however, that because this opinion was not well reasoned, this Court should decline to follow it, and should instead, follow the holding of numerous other courts that guilty plea convictions should be given collateral estopppel effect in a subsequent civil action.

■ The Court finds it unnecessary to decide the issue, however, because even if Defendants are correct that a guilty plea conviction has preclusive effect in a subsequent civil action, that proposition would not require dismissal of Plaintiff Marshall's claims. In this case, unlike the cases cited by Defendants, Plaintiffs allege that Plaintiff Marshall's guilty plea conviction was *subsequently vacated,* and therefore, it can have no preclusive effect in this action.

■ In *Dodrill v. Ludt,* 764 F.2d 442, 444 (6th Cir.1985), the Sixth Circuit held that "a judgment which is vacated, for whatever reason, is deprived of its conclusive effect as collateral estoppel." In *Dodrill,* 764 F.2d at 443, the plaintiff brought a Section 1983 action, alleging violations of the Fourth and Fourteenth Amendments after his conviction was reversed because it was based on an unconstitutional ordinance. During the criminal proceedings, the plaintiff had moved to suppress certain evidence based on the Fourth Amendment, and the court had ruled against him. *Id.* The defendants argued that because the criminal court denied his motion to suppress, collateral estoppel should bar his Section 1983 claims. *Id.*

In rejecting defendants' argument, the court acknowledged that the reversal of plaintiff's conviction had "no bearing on the validity of the fact-findings [in the suppression hearing]." 764 F.2d at 444. Nonetheless, the court concluded that the reversal "vacates the judgment entirely, technically

leaving nothing to which we may accord preclusive effect." *Id.*

The court explained why such a rule is necessary:

> Any other rule would needlessly and astronomically proliferate the number of issues raised on appeal. If a judgment could be entirely vacated yet preclusive effect still be given to issues determined at trial but not specifically appealed, appellants generally would feel compelled to appeal every contrary factual determination. Such inefficiency neither lawyers nor judges ought to court.

764 F.2d at 444.

The court noted that Ohio law was unclear on the issue, but found that the Ohio courts would likely follow its ruling. *Id.*

This Court concludes that Tennessee courts are also likely to reach the same conclusion as the *Dodrill* court. In *McIntyre v. Traughber,* 884 S.W.2d 134, 138 (Tenn.Ct. App.1994), the Tennessee Court of Appeals explained the effect of vacating a judgment:

> Vacating the trial court's judgment removes its precedential value. The judgment, therefore, is not res judicata between the parties and cannot be used to preclude the State from [reasserting its losing position] in later proceedings involving other prisoners.

Accordingly, the vacating of Plaintiff Marshall's conviction prevents Defendants from using his guilty plea to preclude his subsequent civil claims. Therefore, the Court concludes that Plaintiff Marshall's claims should not be dismissed based on Defendants' waiver argument.

**E. *Immunities***

*(1) Nature of Plaintiffs' Claims*

Various Defendants claim they are entitled to either absolute or qualified immunity for the actions alleged in Plaintiffs' Amended Complaint. Before the Court can address the applicability of the claimed immunities, it must identify the specific actions for which each Defendant is alleged to be responsible.[4]

---

**4.** In identifying these alleged actions for purposes of immunity analysis, the Court is not

expressing its opinion on whether each individual action constitutes a constitutional violation.

Because Plaintiffs have alleged a conspiracy among the Defendants to deprive them of their constitutional rights under Section 1983, each Defendant may be responsible for actions taken by other Defendants. The Sixth Circuit has described a civil conspiracy under Section 1983 as:

> ... an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Collyer v. Darling,* 98 F.3d 211, 229 (6th Cir.1996) (quoting *Hooks v. Hooks,* 771 F.2d 935, 943–44 (6th Cir.1985)).

■ If a plaintiff can prove a constitutional deprivation, the conspiracy allegation allows the plaintiff to impute liability onto multiple defendants if the deprivation was performed during the course of the conspiracy. *Dixon v. City of Lawton, Oklahoma,* 898 F.2d 1443, 1449 n. 6 (10th Cir.1990); *Villanueva v. McInnis,* 723 F.2d 414, 418 (5th Cir.1984); *Rojicek v. Community Consolidated School District 15,* 888 F.Supp. 878, 887 (N.D.Ill.1995). A conspiracy allegation does not, however, provide a mechanism by which an act for which the defendant would otherwise be absolutely immune becomes actionable. *See Alioto v. City of Shively, Kentucky,* 835 F.2d 1173, 1174 (6th Cir.1987) (absolute immunity for testimony in judicial proceedings also shields the defendant from liability for alleged conspiracies to give false testimony); *Dory v. Ryan,* 25 F.3d 81, 83 (2nd Cir.1994) (absolute immunity for prosecutors includes alleged conspiracy to present false evidence at a criminal trial).

In arguing that they are entitled to immunity, the Defendants have not sufficiently addressed those actions for which they are alleged to be responsible based on Plaintiffs' conspiracy claims. Therefore, the Court will not address the immunity of the Defendants with respect to those claims. The Court limits its analysis here to those actions for which the Defendants are alleged to be directly involved, and expresses no opinion as to the immunity of the Defendants with regard to the conspiracy claims.

Defendant Coarsey is alleged to have been directly involved in persuading Defendant Apple to lie, and is alleged to have supplied Defendant Apple with the necessary details of the Malone homicide. (Amended Complaint, at ¶¶ 15, 16). Defendant Coarsey is not alleged to have been directly involved in the conviction of Plaintiff Marshall. (Amended Complaint, at ¶ 20).

Defendant Satterfield is alleged to have been directly involved in the following actions:

- Persuading Defendant Apple to lie, and supplying Apple with the necessary details of the homicide. (Amended Complaint, at ¶¶ 15, 16).

- Attempting to persuade Defendant Apple to say he actually witnessed the Malone homicide, and offering Apple the reward money if he would do so. (Amended Complaint, at ¶¶ 15, 16, 17).

- Creating a tape recording on April 30, 1990 in an effort to conceal the events of April 27 and April 28, 1990. (Amended Complaint, at ¶ 19).

- Testifying falsely at the trial of Plaintiff Spurlock. (Amended Complaint, at ¶ 37(c)).

- Giving Defendant Apple "hush money" after Plaintiffs' first trials, in order to induce his continued silence and cooperation. (Amended Complaint, at ¶ 43).

Defendant Satterfield is not alleged to have been directly involved in the conviction of Plaintiff Marshall. (Amended Complaint, at ¶ 20).

Defendants Whitley and Kitchen are alleged to have been directly involved in the following:

- Attempting to persuade Defendant Apple to say he actually witnessed the Malone homicide, and offering Apple the reward

money if he would do so. (Amended Complaint, at ¶¶ 15, 16, 17).

- Presenting false testimony to the grand jury. (Amended Complaint, at ¶¶ 19, 34).
- Deliberately withholding exculpatory information. (Amended Complaint, at ¶¶ 35, 36). Knowingly presenting false testimony of Defendants Apple and Satterfield at Plaintiff Spurlock's trial. (Amended Complaint, at ¶¶ 37(a), (b), (c)).

With respect to Plaintiff Marshall, Defendants Whitley and Kitchen are alleged to have coerced Priscilla Blakemore to testify falsely against Plaintiff Marshall, and to have used that false testimony at trial. (Amended Complaint, at ¶¶ 20, 37(a)). They also allegedly deliberately withheld exculpatory information. (Amended Complaint, at ¶ 37(a)).

Defendant Whitley alone is alleged to have been directly involved in the following:

- Promising, and eventually ordering, Defendant Apple's release from jail for falsely implicating Plaintiff Spurlock in the Malone homicide. (Amended Complaint, at ¶¶ 16, 33).
- Ordering the creation of a tape recording on April 30, 1990 in an effort to conceal the events of April 27 and April 28, 1990. (Amended Complaint, at ¶ 19).
- Giving Defendant Apple "hush money" after Plaintiffs' first trials, in order to induce his continued silence and cooperation. (Amended Complaint, at ¶ 43).
- Testifying falsely in the Plaintiff Spurlock's second trial. (Amended Complaint, at ¶¶ 44(i), (j)).

With respect to Plaintiff Marshall, Defendant Whitley is alleged to have coerced Plaintiff Marshall into accepting a "best interest plea." (Amended Complaint, at ¶¶ 25, 46–48).

### (2) *Prosecutorial Immunity*

Defendants Whitley and Kitchen argue that, as prosecutors, they are absolutely immune from a claim for damages under Section 1983. Plaintiffs concede that these Defendants are immune for some of the actions alleged in the Amended Complaint, but contend that they are not immune for all the actions alleged.

The Supreme Court has applied a "functional" approach in determining whether an official is entitled to immunity by looking at the nature of the function performed. *Imbler v. Pachtman*, 424 U.S. 409, 430–31, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976). Using this approach, the Court has extended to prosecutors absolute immunity from a suit for damages under Section 1983 when the activity involved is "intimately associated with the judicial phase of the criminal process." *Id. Imbler v. Pachtman*, 424 U.S. 409, 430–31, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976). The prosecutor is not immune, however, for administrative duties or investigative functions that do not relate to the prosecutor's preparation for the initiation of prosecution. *Buckley v. Fitzsimmons*, 509 U.S. 259, 271–73, 113 S.Ct. 2606, 2615, 125 L.Ed.2d 209 (1993). For these actions, the prosecutor may only claim qualified immunity. *Burns v. Reed*, 500 U.S. 478, 492–96, 111 S.Ct. 1934, 1943–44, 114 L.Ed.2d 547 (1991).

In explaining the distinction between the prosecutor's role and the investigator's role, the Court has stated:

There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.

*Buckley*, 509 U.S. at 273, 113 S.Ct. at 2616 (citation omitted).

In applying this approach, the Court has held that a state prosecutor is absolutely immune for initiating a criminal prosecution and presenting the state's case. *Imbler*, 424 U.S. at 430–31, 96 S.Ct. at 995. *See also Ireland v. Tunis*, 113 F.3d 1435 (6th Cir. 1997). The Court has held that a prosecutor is immune from suit for presenting false testimony through witnesses and participat-

ing in a probable cause hearing that led to the issuance of a search warrant. *Burns*, 500 U.S. at 487–92, 111 S.Ct. at 1940–42.

The Court has refused to extend absolute immunity to a prosecutor's giving of legal advice to the police regarding the use of hypnosis as an investigative technique and the giving of advice as to existence of probable cause to arrest. *Burns*, 500 U.S. at 491–98, 111 S.Ct. at 1942–45. The Court has also refused to extend absolute immunity to a prosecutor's allegedly conspiring to fabricate evidence during the preliminary investigation of a crime, and for making false statements at a press conference. *Buckley*, 509 U.S. at 271–78, 113 S.Ct. at 2615–18.

Plaintiffs concede that Defendants Whitley and Kitchen have absolute immunity for allegedly presenting false testimony to the grand jury, and for allegedly deliberately withholding exculpatory information. (Plaintiffs' Consolidated Response To Defendants' Motions To Dismiss, at 25 (Docket No. 55)). Plaintiffs concede that these Defendants also have absolute immunity for allegedly knowingly presenting false testimony at Plaintiffs' trials. *(Id.)* [5]

Defendants Whitley and Kitchen do not specifically address whether absolute prosecutorial immunity extends to the other actions for which they are alleged to have been directly involved. The Court concludes that they are not covered by absolute prosecutorial immunity. Those allegations relating to their efforts to have Defendant Apple testify falsely against Plaintiff Spurlock be-

fore Plaintiff Spurlock's first trial [6] are not covered by absolute immunity because they are not intimately associated with the judicial phase of the criminal process.

Similarly, the Court concludes that prosecutorial immunity does not apply to the alleged efforts to have Ms. Blakemore testify falsely against Plaintiff Marshall at his trial. These actions allegedly took place "well before they [Defendants Whitley and Kitchen] could properly claim to be acting as advocates." *Buckley*, 509 U.S. at 275, 113 S.Ct. at 2616. This conduct is similar in nature to fabrication of evidence during a preliminary investigation, which the *Buckley* Court held was not entitled to immunity. 509 U.S. at 271–77, 113 S.Ct. at 2615–17.

As for the allegations that Defendant Whitley gave Defendant Apple "hush money" after Plaintiffs' first trials in order to induce his continued silence and cooperation, and that he coerced Plaintiff Marshall into accepting a "best interest plea," the Court concludes that Defendant Whitley is not entitled to dismissal at this stage.[7] It is unclear from the Amended Complaint whether Defendant Whitley was still acting as a prosecutor of Plaintiffs' cases at this time, or whether he had already recused himself before engaging in this conduct. Under these circumstances, the Court declines to address whether these actions are entitled to prosecutorial immunity.

### (3) *Testimonial Immunity*

Defendant Satterfield argues Plaintiffs' claims against him should be dismissed

---

**5.** Defendants Whitley and Kitchen take the position that these are the only viable claims against them. They argue that Plaintiffs are limited to those claims derived from the decisions of the Tennessee Court of Criminal Appeals overturning Plaintiffs' convictions because those decisions are incorporated by reference in the Amended Complaint. According to these Defendants, the conduct the appeals court found objectionable would be covered by absolute prosecutorial immunity. Defendants have not cited any authority to support the limiting of Plaintiffs' claims in this way, and the Court declines to read the Amended Complaint in so narrow a fashion.

**6.** As to Defendants Whitley and Kitchen, these allegations would include
● Attempting to persuade Defendant Apple to say he actually witnessed the Malone homi-

cide, and offering Apple the reward money if he would do so. (Amended Complaint, at ¶¶ 15, 16, 17).
As to Defendant Whitley alone, these allegations would include:
● Promising, and eventually ordering, Defendant Apple's release from jail for falsely implicating Plaintiff Spurlock in the Malone homicide. (Amended Complaint, at ¶¶ 16, 33).
● Ordering the creation of a tape recording on April 30, 1990 in an effort to conceal the events of April 27 and April 28, 1990. (Amended Complaint at ¶ 19).

**7.** The allegation that Defendant Whitley testified falsely at Plaintiff Spurlock's second trial is addressed in the next section of this Memorandum.

based on testimonial immunity, relying on *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). In *Briscoe,* the Supreme Court held that witnesses alleged to have given false testimony, including police officers, are absolutely immune from a suit for damages under Section 1983.

Plaintiffs concede that Defendant Satterfield is immune for giving false testimony during Plaintiff Spurlock's trial. (Plaintiffs' Consolidated Response To Defendants' Motions To Dismiss, at 26 (Docket No. 55)). They dispute, however, Defendant Satterfield's contention that this testimonial immunity should result in dismissal of all their claims against him.

 Defendant Satterfield specifically argues that he is immune from suit for coercing Defendant Apple to testify falsely because Defendant Apple is immune for giving that false testimony at Plaintiff Spurlock's trial. Absolute immunity for witnesses, however, "shields only those defendants who gave testimony in a judicial proceeding." *Alioto,* 835 F.2d at 1174. Therefore, Defendant Satterfield is not vicariously immune from suit for his alleged involvement in coercing Defendant Apple to testify falsely.

Accordingly, the Court concludes that Defendant Satterfield is entitled to absolute prosecutorial immunity from suit for allegedly falsely testifying at Plaintiff Spurlock's trial. Defendant Satterfield is not entitled to absolute immunity for the other actions in which he is alleged to have been directly involved.

Defendant Whitley also argues that he is entitled to absolute testimonial immunity from suit for giving allegedly false testimony at the second trial of Plaintiff Spurlock. Plaintiffs concede that Defendant Whitley is entitled to immunity for this claim. (Plaintiffs' Consolidated Response To Defendants' Motions To Dismiss, at 26 (Docket No. 55)). The Court agrees.

*(4) Qualified Immunity*

 Defendants Coarsey and Satterfield argue that if they are not immune from suit based on other immunity doctrines, they should be held to be immune under the doc-trine of qualified immunity. Qualified immunity shields government officials acting in their official capacities from damages liability in a Section 1983 suit if their actions did not "violate clearly established law of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Ireland,* 113 F.3d at 1448.

Defendant Coarsey, amazingly, argues that the alleged soliciting of false testimony for use in a trial against a criminal defendant does not violate a clearly established constitutional right. He does not cite any authority for this argument.

 The Court is unpersuaded. Solicitation of false testimony for use in prosecuting an individual violates clearly established constitutional rights. *See, e.g., Geter v. Fortenberry,* 882 F.2d 167, 169 (5th Cir.1989) (police officer not entitled to qualified immunity for procuring false identification by unlawful means or for deliberately concealing exculpatory evidence); *Olson v. Tyler,* 771 F.2d 277, 281 (7th Cir.1985) (police officer not entitled to qualified immunity for including false statements in arrest warrant affidavit). Accordingly, Defendant Coarsey has not shown that he is entitled to dismissal based on qualified immunity.

Defendant Satterfield argues that if the claims against him are not dismissed under absolute testimonial immunity, he is entitled to dismissal based on qualified immunity. The Court has already held that Defendant Satterfield is entitled to absolute testimonial immunity from the allegation that he testified falsely at Plaintiff Spurlock's trial. As set forth above, however, Defendant Satterfield is also alleged to have been directly involved in the following actions:

● Persuading Defendant Apple to lie, and supplying Apple with the necessary details of the homicide. (Amended Complaint, at ¶¶ 15, 16).

● Attempting to persuade Defendant Apple to say he actually witnessed the Malone homicide, and offering Apple the reward money if he would do so, (Amended Complaint, at ¶¶ 15, 16, 17).

- Creating a tape recording on April 30, 1990 in an effort to conceal the events of April 27 and April 28, 1990. (Amended Complaint, at ¶ 19).
- Giving Defendant Apple "hush money" after Plaintiffs' first trials, in order to induce his continued silence and cooperation. (Amended Complaint, at ¶ 43).

In his Motion, however, Defendant Satterfield does not address whether he is entitled to qualified immunity for these other alleged actions. Under these circumstances, the Court declines to address whether Defendant Satterfield is entitled to qualified immunity for these actions.

### F. Municipal Liability

#### (1) Sumner County's Liability for Actions of the Sheriff and the District Attorney

Defendant Sumner County argues that it is not liable for the actions of the Sumner County Sheriff, Richard Sutton, because the Sheriff is an agent of the State, not the County. In three separate briefs, Defendant Sumner County presents an extensive discussion of why sheriffs in Tennessee should be considered officers of the state rather than the county in which they serve. The Defendant places principal reliance on a recent decision of the Supreme Court in *McMillian v. Monroe County, Alabama*, — U.S. —, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997), in which the Court held that the sheriff of Monroe County, Alabama was a policymaker for the state and not the county for purposes of Section 1983 liability.

Defendant Sumner County also argues that it cannot be held liable for the actions of District Attorney Whitley because he is an officer of the State, not the County.

Defendant makes these arguments even though the allegations of Plaintiffs' Amended Complaint do not clearly identify Sheriff Sut-

ton as a Defendant. In their Amended Complaint, Plaintiffs specifically name Deputy Sheriff Satterfield and Sumner County as Defendants. They do *not* name Sheriff Richard Sutton as a Defendant. In Count II of the Amended Complaint, however, the Plaintiffs head the section; "(Plaintiffs' *Monell* Policy, Practice and Custom Claim) (sic) Against *Defendants* Sumner County and *Richard Sutton*," (Amended Complaint, at 23). Thus, it is unclear whether Plaintiffs seek to name Sheriff Richard Sutton as a Defendant, and if so, whether he is being sued in his official or individual capacity.[8]

As for liability for the actions of District Attorney Whitley, the Amended Complaint alleges that he is "a de facto policy maker for the Sumner County Sheriff's Department." (Amended Complaint, at ¶¶ 2, 56).

Plaintiffs seek to impose liability on Sumner County based on *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 688–96, 98 S.Ct. 2018, 2035–38, 56 L.Ed.2d 611 (1978). Under *Monell*, a municipality cannot be held liable under Section 1983 solely because it employs a tortfeasor. *Id.; Board of County Comm'rs of Bryan County, Okl. v. Brown*, — U.S. ——, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Section 1983 extends liability only to persons who "cause" constitutional violations, and municipalities do not "cause" constitutional violations solely by having employed a constitutional tortfeasor. *Brown*, — U.S. at ——–——, 117 S.Ct. at 1387–88.

Instead, a plaintiff must identify a "policy" or "custom" that caused the plaintiff's injury, and show a direct causal link between the custom or policy and the constitutional deprivation. *Id.* In other words, a plaintiff must show that his particular injury was incurred because of the execution of that policy. *Id.*

8. Count II alleges that Sumner County and the Sumner County Sheriff's Department failed "to properly hire, train, supervise, discipline, transfer, monitor, counsel and otherwise control Sheriff's · officers" to prevent their unconstitutional conduct toward criminal suspects. (Amended Complaint, at ¶ 54). Plaintiffs also allege ,that the Department had a "law enforcement code of silence" by which officers refused to report mis-

conduct of other officers, and took other steps to prevent the discipline or liability of other officers. (Amended Complaint, at ¶¶ 53–54). Plaintiffs allege that these policies are evidenced by the fact that Defendant Satterfield was not investigated or disciplined after the Tennessee Court of Criminal Appeals rendered its decision in Plaintiff Spurlock's case. (Amended Complaint, at ¶ 56).

The particular policy or custom in question may be set by the government's lawmakers or by those "who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused" the constitutional tort alleged. *McMillian,* —— U.S. at ——, 117 S.Ct. at 1736.

Applying this analysis to the allegations in Plaintiffs' Amended Complaint raises several questions. First, did the Plaintiffs intend to name Sheriff Richard Sutton as a defendant, or do they simply identify him to indicate that he is alleged to have final policymaking authority for Sumner County with respect to the actions Plaintiffs allege caused their injuries? In addition, who are the constitutional tortfeasors whom Plaintiffs allege carried out the unconstitutional policies or customs? Do Plaintiffs seek to hold Sumner County liable for the actions of Deputy Sheriff Satterfield alone [9], or do they seek to hold the County liable for the actions of other "law enforcement Defendants" named in the Amended Complaint? Similarly, do Plaintiffs seek to hold the County liable for the actions of District Attorney Whitley and Assistant District Attorney Kitchen?

Before addressing the issue Defendant Sumner County raises in its Motion to Dismiss, resolution of which may have widespread ramifications for both the state and local governments in Tennessee, the Court will require Plaintiffs to clarify these issues. Accordingly, Plaintiffs are to file a second amended complaint, on or before July 28, 1997, clarifying the issues identified by the Court.

If Plaintiffs fail to file a second amended complaint that clarifies these issues, the Court will assume that they do not intend to name Sheriff Sutton as a Defendant, and that they seek to hold the County liable only

for the actions allegedly carried out by Defendant Satterfield. If Plaintiffs do file a second amended complaint which makes the relationship between the Sheriff and the County a relevant consideration, Defendant Sumner County may renew its Motion to Dismiss to raise this issue.[10]

### (2) *City of Hendersonville's Liability for Actions of Police Department*

Defendant City of Hendersonville argues that it is not liable for the actions of the Hendersonville Police Department because it has no custom or policy that caused Plaintiffs' injuries. Defendant has submitted the affidavit of Hendersonville Police Chief David Key to support its argument.

In their Amended Complaint, Plaintiffs allege that the City of Hendersonville and its Police Department failed to properly hire, train, supervise, discipline, transfer, monitor, counsel and otherwise control police officers to prevent their unconstitutional conduct toward criminal suspects. (Amended Complaint, at ¶ 63). Plaintiffs also allege that the Department had a "law enforcement code of silence" by which officers refused to report misconduct of other officers, and took other steps to prevent the discipline or liability of other officers. (Amended Complaint, at ¶ 63–64). Plaintiffs allege that these policies are evidenced by the fact that Defendant Coarsey, who allegedly devised the scheme whereby Defendant Apple would testify falsely against the Plaintiffs, was not investigated or disciplined after the Tennessee Court of Criminal Appeals rendered its decision in Plaintiff Spurlock's case. (Amended Complaint, at ¶ 66).

Plaintiffs ask in their response to the Motion filed by Defendant City of Hendersonville that they be permitted to engage in

---

9. The Court notes that notwithstanding *Monell* and its progeny, the County is made specifically liable for the actions of deputy sheriffs under a Tennessee statute, Tenn.Code Ann. § 8–8–302, which provides:

 Anyone incurring any wrong, injury, loss, damage or expense resulting from any act or failure to act on the part of any deputy appointed by the sheriff may bring suit against the county in which the sheriff serves; provided, that the

deputy is, at the time of such occurrence, acting by virtue of or under color of the office.

10. At that time, given the implications of this decision for the State of Tennessee, the Court expects the Attorney General's Office to file a brief stating its position on this issue. Assistant Attorney General Mary M. Bers has appeared on behalf of Defendants Whitley and Kitchen in this case.

discovery before the Court rules on this issue. Plaintiffs contend that the Case Management Order (Docket No. 31) entered in this case provides only for the filing of motions to dismiss, and stays discovery until those motions are resolved.[11]

Because the Defendant has filed an affidavit to support its argument, its motion must be treated as one for summary judgment and disposed of as provided in Federal Rule of Civil Procedure 56. Fed.R.Civ.P. 12(b); *Briggs,* 61 F.3d at 493. Rule 56(f) provides that the court may "refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

The Court is of the opinion that Plaintiffs should be permitted to engage in discovery on this issue before the Court considers the application for summary judgment by Defendant City of Hendersonville. Accordingly, the Motion to Dismiss and/or for Summary Judgment filed by the Defendant City of Hendersonville is denied as to this issue, without prejudice to refiling the motion after the completion of discovery on this issue.

### G. *Failure by Plaintiff Marshall To State A Claim*

Defendants Satterfield and Sumner County argue that Plaintiff Marshall has failed to state a claim against them. As noted above, the Amended Complaint does not allege any direct involvement by Defendant Satterfield in Plaintiff Marshall's conviction. It does, however, allege that he was a participant in a conspiracy with the other Defendants to obtain convictions against both Plaintiffs. Defendant Sumner County is alleged to be liable for the actions of Deputy Satterfield based on *Monell.*

■ Defendants argue that because some of the participants in the alleged conspiracy against Plaintiff Marshall are protected from suit by either absolute prosecutorial or testimonial immunity. Plaintiff Marshall may not maintain an action against alleged co-conspirator Defendant Satterfield. The Sixth Circuit has held, however, that absolute immunity for witnesses does not extend to those who allegedly participated in persuading those witnesses to testify falsely. *Alioto,* 835 F.2d at 1174. In addition, alleged co-conspirators may not claim protection from suit based on the absolute prosecutorial immunity of another alleged member of the conspiracy. *Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980); *Macko v. Bryon,* 641 F.2d 447, 449–50 (6th Cir.1981). Accordingly, Plaintiff Marshall's claims against Defendant Satterfield and Defendant Sumner County will not be dismissed for failure to state a claim based on absolute immunity.

Defendant Whitley argues that Plaintiff Marshall has failed to state a claim against him relating to his conduct after Plaintiff Marshall's trial. Defendant Whitley contends that the allegation that he coerced Plaintiff Marshall into accepting a "best interest plea" does not state a cognizable claim.

The Amended Complaint alleges that Plaintiff Marshall accepted the plea as a result of Defendant Whitley's continuing failure to disclose exculpatory evidence, and "coercion" by Defendant Whitley. Defendant Whitley does not cite any cases or engage in any analysis of whether this conduct states a cognizable claim. In addition, as noted above, it is unclear whether Defendant Whitley was acting as a prosecutor at this time, or whether he was, instead, acting in some other role. Under these circumstances, the Court denies Defendant Whitley's motion to dismiss as to this issue.

### H. *Dismissal of Count II As To Defendant Whitley*

Defendant Whitley argues that to the extent he is named in Count II of the Amended Complaint, Plaintiffs' claim in Count II is barred by the Eleventh Amendment. Plain-

---

11. In its Local Rule 8(b)(7) Statement (Docket No.43), Defendant appears to contend that Plaintiffs should not be allowed to engage in discovery before resolution of its Motion because in a document filed before the Magistrate Judge issued the stay of all discovery (Docket No. 28), Plaintiffs did not list this issue as one for which they sought preliminary discovery. This discovery plan was not adopted by the Magistrate Judge, and the Court is not persuaded that it should bar the Plaintiffs from discovery before the Court rules on the Defendant's Motion.

tiffs respond in their brief that Defendant Whitley is not named in Count II. Given Plaintiffs' response, the Court will construe Count II as seeking to impose liability only on Defendant Sumner County under the *Monell* analysis. Therefore, the Court finds it unnecessary to address Defendant Whitley's Eleventh Amendment argument.

## I. *State Law Claims*

### (1) *Jurisdiction Under the Tennessee Governmental Tort Liability Act*

Defendant City of Hendersonville argues that this Court should not exercise jurisdiction over Plaintiffs' state law malicious prosecution claim brought in Count VI of the Amended Complaint. Plaintiffs have not responded to this argument.

In Count VI of the Amended Complaint, Plaintiffs allege that the City of Hendersonville is liable for Defendant Coarsey's alleged malicious prosecution of them pursuant to the provisions of the Tennessee Governmental Tort Liability Act ("TGTLA"). (Amended Complaint, at ¶ 79–80). Specifically, Plaintiffs cite Tennessee Code Annotated §§ 29–20–205[12], 29–20–310[13], and 8–8–302. (*Id.*)

Defendant argues that this Court should not exercise jurisdiction over the TGTLA claim based on the court's opinion in *Beddingfield v. City of Pulaski,* 666 F.Supp. 1064, 1066 (M.D.Tenn.1987), *rev'd on other grounds,* 861 F.2d 968 (6th Cir.1988). In *Beddingfield,* the court held that pendant jurisdiction[14] over plaintiff's TGTLA claim would be inappropriate in light of Section 29–20–307 of the TGTLA, which vests exclusive

original jurisdiction in the state's circuit courts to adjudicate claims under the Act.

In reaching its decision, the court noted that federal jurisdiction in that case was based on the existence of a federal question, and jurisdiction over the state law claims was based only on pendent jurisdiction. 666 F.Supp. at 1066–67. The court distinguished those cases in which jurisdiction over state law claims was based on diversity:

> In a diversity claim, federal policy already has been declared in the relevant jurisdictional section of the Constitution. In contrast, in the case of a pendent state-law claim, no Supremacy Clause interests are implicated.

666 F.Supp. at 1067. *See also Metaljan v. Memphis–Shelby County Airport Authority,* 752 F.Supp. 834, 836–37 (W.D.Tenn.1990) (court does not give effect to TGTLA exclusive jurisdiction provision in a diversity case).

■■■ Like the TGTLA claim in *Beddingfield,* the TGTLA claim in this case was brought based on the court's supplemental jurisdiction. Plaintiffs do not claim federal jurisdiction exists over this claim based on diversity of citizenship.

The statute governing the exercise of supplemental jurisdiction, 28 U.S.C. § 1367, provides that a court may decline to exercise that jurisdiction if "in exceptional circumstances," there are "compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4). The Court concludes that the exclusivity provision of the TGTLA provides a compelling reason for this Court to decline supplemental jurisdiction of the TGTLA claim in this case.[15] Accordingly, Count VI of the Amended Complaint is dismissed.

---

**12.** Section 29–20–205 of the TGTLA provides that governmental entities shall not be immune from suit "for injury proximately caused by a negligent act or omission of any employee within the scope of his employment," and goes on to list several exceptions to the waiver of immunity.

**13.** Section 29–20–310 of the TGTLA provides for certain limits on the amount recoverable under the Act.

**14.** In 1990, Congress codified much of the case law doctrines of pendent and ancillary jurisdiction into a statute that defines the parameters of "supplemental" jurisdiction. 28 U.S.C. § 1367. *See Musson Theatrical, Inc. v. Federal Express Corp.,* 89 F.3d 1244, 1254 (6th Cir.1996).

**15.** Defendant City of Hendersonville has not specifically addressed the other statute cited by Plaintiffs in Count VI, but the Court concludes that Plaintiffs may not base jurisdiction on this statute because they have not stated a claim under the statute. The statute cited by Plaintiffs, Tennessee Code Annotated Section 8–8–302, removes immunity of counties for acts of deputy sheriffs in the county acting under color of the office. Plaintiffs have not alleged that Defendant Coarsey is a deputy sheriff. Plaintiffs allege that he is an employee of the Hendersonville Police Department. In addition, Plaintiffs have not alleged that this statute removes immunity for a city, rather than a county. Under these circumstances, the Court concludes that Plaintiffs' claim

## (2) *Immunities*

(a) *Sovereign Immunity.* Defendants Whitley and Kitchen argue that Plaintiffs' state law claim against them for malicious prosecution is barred by sovereign immunity and prosecutorial immunity. As for sovereign immunity, Defendants argue that because the Amended Complaint does not state that they are sued in their individual capacities as to the state law claims, they are being sued in their official capacities, and Plaintiffs' claims are, therefore, barred by the doctrine of sovereign immunity. Plaintiffs respond in their brief that these Defendants are being sued under the state law claims in their individual capacity only.

In *Wells v. Brown,* 891 F.2d 591 (6th Cir. 1989), the Sixth Circuit held that a plaintiff must set forth clearly in his pleading that he is suing state defendants in their individual capacity for damages, or the court will assume the defendants are being sued in their official capacity only. In a subsequent decision, *Pelfrey v. Chambers,* 43 F.3d 1034, 1038 (6th Cir.1995), the court explained that the rationale for this pleading requirement was to afford state officials sufficient notice that they could be held personally liable for the payment of any damage award.

Nonetheless, the *Pelfrey* Court did not make the assumption of official capacity permitted by *Wells* even though the plaintiff in *Pelfrey* did not specify in his complaint in what capacity he was suing the defendants. The court distinguished the decision in *Wells* by explaining that the plaintiff had filed a motion one month after the complaint was filed that made clear his intention to sue the defendants in their individual capacity. 43 F.3d at 1038. Based on this motion, the court concluded that the defendants were given sufficient notice that they were being sued in their individual capacity. *Id.*

The Sixth Circuit has relied on its decision in *Pelfrey* to hold that even though the plaintiff did not specify capacity in his complaint, the defendant was given sufficient notice that he was being sued in his individual and official capacities through the plaintiff's reply to defendant's motion for summary judgment.

against Defendant City of Hendersonville under

*Abdur–Rahman v. Michigan Department of Corrections,* 65 F.3d 489, 491 (6th Cir.1995).

 In the Amended Complaint, Plaintiffs state, in identifying the parties, that Defendants Whitley and Kitchen are being sued in their individual capacity in Count I. (Amended Complaint, at ¶¶ 2, 3). Count I alleges a Section 1983 claim. The state law claim against these Defendants, set forth in Count IV, does not state in what capacity these Defendants are being sued. (Amended Complaint, at ¶¶ 69–73). It does state, however, that Plaintiffs seek "[a]ctual or compensatory damages jointly and severally against Defendants Lawrence Ray Whitley, Jerry R. Kitchen, John D. Coarsey, Danny Satterfield and Henry Apple." (Amended Complaint, at ¶ 73(A)). Plaintiffs also request punitive damages from these Defendants. (Amended Complaint, at ¶ 73(B)).

The Court concludes that Defendants Whitley and Kitchen have been given sufficient notice of Plaintiffs' intention to seek damages against them personally given that Plaintiffs' request for damages names Defendants Whitley and Kitchen specifically, and given that Plaintiffs' response to Defendants' Motion states that they seek to sue these Defendants in their individual capacity. The Court shall read the Amended Complaint to sue Defendant Whitley and Kitchen in their individual capacities regarding the state law claim.

(b) *Absolute Prosecutorial Immunity.* Defendants Whitley and Kitchen alternatively argue that they are protected from suit on Plaintiffs' state law malicious prosecution claim by absolute prosecutorial immunity. Plaintiffs contend that Defendants' prosecutorial immunity under state law should extend no further than prosecutorial immunity under federal law.

 Tennessee courts have adopted the analysis of prosecutorial immunity used by federal courts in Section 1983 actions. Citing *Buckley v. Fitzsimmons,* and *Burns v. Reed,* which the Court discussed above, the Tennessee Supreme Court has held that absolute prosecutorial immunity from suit on a state law claim extends to actions taken by a

Section 8–8–302 should be dismissed.

prosecutor "in his capacity as an advocate for the State," but does not extend to "actions taken in an investigative or administrative capacity." *Shell v. State of Tennessee,* 893 S.W.2d 416, 422 (Tenn.1995). *See also Willett v. Ford,* 603 S.W.2d 143, 146–48 (Tenn. Ct.App.1979) (immunities recognized by federal courts in Section 1983 actions are applicable to common law actions against prosecutors). Consequently, the Court's application of absolute prosecutorial immunity as to Plaintiffs' federal claims also applies here.

Therefore, Defendants Whitley and Kitchen have absolute immunity for allegedly presenting false testimony to the grand jury, for allegedly deliberately withholding exculpatory information, and for allegedly knowingly presenting false testimony at Plaintiffs' trials.

Defendants Whitley and Kitchen are not absolutely immune from those claims relating to their efforts to have Defendant Apple testify falsely against Plaintiff Spurlock before Plaintiff Spurlock's first trial.[16] Furthermore, absolute immunity does not apply to the alleged efforts to have Ms. Blakemore testify falsely against Plaintiff Marshall at his trial.

As for the allegations that Defendant Whitley gave Defendant Apple "hush money" after Plaintiffs' first trials in order to induce his continued silence and cooperation, and that he coerced Plaintiff Marshall into accepting a "best interest plea," the Court again concludes that Defendant Whitley is not entitled to dismissal at this stage. It is unclear from the Amended Complaint whether Defendant Whitley was still acting as a prosecutor for Plaintiffs' cases at that time, or whether he had already recused himself before engaging in this purported conduct.[17]

*(3) Supplemental Jurisdiction*

Finally, Defendants argue that if Plaintiffs' federal claims are dismissed, the Court should not exercise supplemental jurisdiction over Plaintiffs' state law claims. The Court has not dismissed Plaintiffs' federal claims, and therefore, this issue is moot.

## IV. *Conclusion*

For the reasons set forth above, the Court concludes that the pending motions to dismiss should be denied, except that Defendants Whitley, Kitchen and Satterfield are entitled to the immunities described above, and Count VI is dismissed. In addition, Plaintiffs are to file a second Amended Complaint, on or before July 28, 1997, which clarifies the issues identified by the Court relating to the *Monell* allegations made in Count II of the Amended Complaint, and which adds a Fourth Amendment claim.

The Court is concerned that this case will escalate into the filing of numerous motions for partial summary judgment. Accordingly, no party may file more than one additional dispositive motion without the prior consent of the District Judge.

This case is referred to the Magistrate Judge for further customized case management.

It is so ORDERED.

---

**16.** As to Defendants Whitley and Kitchen, these allegations would include

- Attempting to persuade Defendant Apple to say he actually witnessed the Malone homicide, and offering Apple the reward money if he would do so. (Amended Complaint, at ¶¶ 15, 16, 17).

As to Defendant Whitley alone, these allegations would include:

- Promising, and eventually ordering, Defendant Apple's release from jail for falsely impli-

cating Plaintiff Spurlock in the Malone homicide. (Amended Complaint, at ¶¶ 16, 33).
- Ordering the creation of a tape recording on April 30, 1990 in an effort to conceal the events of April 27 and April 28, 1990. (Amended Complaint, at ¶ 19).

**17.** Defendant Whitley has not requested absolute testimonial immunity under state law for allegedly testifying falsely at Plaintiff Spurlock's second trial.