Reginald BROWN and Nicholas Biles, Plaintiffs,

v.

CITY OF MEMPHIS and Arthur Sease IV, individually and as a member of the City of Memphis Police Department, Defendants.

No. 05–2419 DP.

United States District Court, W.D. Tennessee, Western Division.

July 7, 2006.

John Houser Parker, II, Morton & Germany, Memphis, TN, for Plaintiffs.

Barbaralette G. Davis, City Attorney's Office, Henry L. Klein, Apperson Crump & Maxwell, PLC, Memphis, TN, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

DONALD, District Judge.

Before the Court is Defendants' motion to dismiss Plaintiffs' complaint for failure to state a cognizable legal claim upon which relief can be granted under Fed. R.Civ.P. 12(b)(6). On April 14, 2005, Plaintiffs brought an action in the Court of General Sessions of Shelby County, Tennessee asserting various constitutional and common law claims against Defendants in connection with their alleged unlawful detention, search and seizure, and robbery by Defendant Sease, a Memphis police officer. Defendants subsequently removed the matter to federal court. Upon review of the facts, relevant statutory and case law, and for the reasons stated herein, the Court grants in part and denies in part Defendants' motion to dismiss.

## I. BACKGROUND[1]

On the afternoon of April 10, 2004[2], Plaintiffs Reggie Brown and Nicholas Biles were traveling eastbound on James Road in Memphis, Tennessee, with Brown at the wheel of a 1999 Chevrolet van. (2d Am.Compl. ¶ 10). The van carrying Plaintiffs was stopped by Defendant, Officer Arthur Sease IV, near the intersection of James Road and Austin Peay Highway. *Id.* at 11. At the time Sease made the traffic stop, he was driving a Memphis Police Department patrol car and was dressed in his Memphis Police Department uniform, complete with badge, and was armed with a service pistol. *Id.* at 11, 13.

Sease approached Plaintiffs' vehicle and asked to see Brown's license and registration. *Id.* at 14. When Brown was unable to produce the registration, Sease ordered him out of the van and searched him, finding and confiscating $400 in cash in the process. *Id.* Sease placed Brown in the back of the squad car and proceeded to search Plaintiff Niles, removing from his pockets and confiscating $800 in cash. *Id.* at 15. Sease then placed Niles in the back of the squad car and proceeded to search Plaintiffs' van, confiscating Brown's lockbox containing $31,400. *Id.* at 15, 18.

---

1. The factual allegations presented herein are taken from Plaintiffs' complaint and are presumed to be true for purposes of the instant motion only.

2. The complaint describes the date as "[o]n or about April 10, 2004."

Sease then ordered Plaintiffs to leave immediately, threatening them by placing his hand on his service weapon. *Id.* at 19. Plaintiffs left the scene and later reported the incident to the Memphis Police Department. *Id.* Officer Sease was subsequently arrested and charged with robbery and official oppression in connection with the incident. *Id.* at 23.

On April 14, 2005, Plaintiffs brought suit in the Court of General Sessions of Shelby County, Tennessee asserting various constitutional and common law claims against Defendants in connection with the alleged unlawful detention, search and seizure, and robbery by Defendant Sease. Plaintiffs allege, as causes of action, substantive due process and civil rights violations under 42 U.S.C. § 1983; negligence and gross negligence; and negligence *per se.*

On June 7, 2005, Defendants removed this case to this district court, based on federal question and supplemental jurisdiction grounds. Defendant has now moved under Fed.R.Civ.P. 12(b)(6) to dismiss the case for failure to state a cognizable legal claim upon which relief can be granted.

## II. LEGAL STANDARD

A party may bring a motion to dismiss for failure to state a claim under Rule 12(b)(6). This motion only tests whether the plaintiff has pleaded a cognizable claim. *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988). Essentially, it allows the court to dismiss meritless cases which would otherwise waste judicial resources and result in unnecessary discovery. *See, e.g., Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

The Supreme Court has held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v.* *Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Neitzke,* 490 U.S. at 326–27, 109 S.Ct. 1827; *Lewis v. ACB Bus. Serv., Inc.,* 135 F.3d 389, 405 (6th Cir.1997). Thus, the standard to be applied when evaluating a motion to dismiss for failure to state a claim is liberal in favor of the party opposing the motion. *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). Even if the plaintiff's chances of success appear remote or unlikely, a motion to dismiss should be denied.

To determine whether a motion to dismiss should be granted, the court must first examine the complaint. The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). The complaint must provide the defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47, 78 S.Ct. 99; *Westlake,* 537 F.2d at 858. The plaintiff has an obligation to allege the essential material facts of the case. *Scheid,* 859 F.2d at 436–37.

In reviewing the complaint, the court must accept as true all factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983). Where there are conflicting interpretations of the facts, they must be construed in the plaintiff's favor. *Sinay v. Lamson & Sessions Co.,* 948 F.2d 1037, 1039–40 (6th Cir.1991). However, legal conclusions or unwarranted factual inferences should not be accepted as true. *Lewis,* 135 F.3d at 405–06.

## III. ANALYSIS

### A. Federal Claims: § 1983

Section 1983 creates a cause of action against any person who, acting under color of state law, abridges rights created by the Constitution and laws of the

United States. 42 U.S.C. § 1983. Section 1983 suits may be maintained against a defendant in both an official and an individual capacity. *Hardin v. Straub*, 954 F.2d 1193, 1198 (6th Cir.1992). Individual-capacity suits seek to impose personal liability upon a government official for actions taken under color of state law, whereas official-capacity suits merely represent an alternative means of pleading an action against a government entity. *Id.*

The style of Plaintiffs' second amended complaint makes clear that Plaintiffs are suing Defendant Sease in both his individual and official capacities. By bringing suit against Sease in his official capacity as a member of the Memphis Police Department, Plaintiffs are in effect suing his employer, the City of Memphis. In a harmless redundancy, the complaint also lists the City of Memphis separately as a defendant.

### 1. Claim against Defendant Sease

■ To state a cognizable § 1983 claim against Defendant Sease in his individual capacity, Plaintiffs must allege 1) that Sease deprived them of a right, privilege, or immunity secured to them by the United States Constitution or federal law; and 2) that Sease caused the deprivation while acting under color of law. 42 U.S.C. § 1983.

Plaintiffs allege that Sease stopped their car without probable cause, searched the car and their persons without warrant or probable cause, illegally detained them in the back of a squad car, and robbed them of a considerable amount of cash. They allege that these offenses, conducted by a police officer acting as a police officer, violated their Fourth Amendment right to be secure in their persons against unreasonable searches and seizures and their Due Process rights under the Fourteenth Amendment.

The facts as alleged support a plausible claim that Sease deprived Plaintiffs of their Fourth Amendment and Due Process rights. There appears to be no dispute that Defendant Sease acted under color of the laws of the State of Tennessee in the incident at issue. Since Plaintiffs have made out a viable, *prima facie* case against Defendant Sease, motion to dismiss the § 1983 complaint against Sease is denied.

### 2. Claim against Defendant City of Memphis

■ Municipalities are not immune from suit under § 1983. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). However, to sustain a § 1983 cause of action against the City, Plaintiffs must do more than simply establish that they were injured by a City police officer. A municipality cannot be held liable under § 1983 for an injury inflicted solely by its employees. *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 441 (6th Cir.2000). For the City to be held liable, Plaintiffs must demonstrate that the City, through the execution of a government policy or custom, inflicted the alleged injury. *Id.* Such policy or custom must represent official policy, whether made by the government's lawmakers or other decision makers. *Id.* Even if the employee's act in question had no formal approval, it may subject the municipality to liability if the relevant practice is so widespread as to have the force of law. *Board of County Comm'rs of Bryan County, Okla. v. Brown,* 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Finally, Plaintiffs must demonstrate that the government's conduct was causally connected to the deprivation of constitutional rights, the "moving force" behind the injury alleged. *Id. See also City of Canton v. Harris,* 489 U.S. 378, 385–89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

Plaintiffs do not fault the written policies and procedures of the City of Memphis and its police department. (2d Am. Compl. ¶ 32). They strongly imply, in fact, that Sease's conduct was contrary to those stated policies and procedures. *Id.* Plaintiffs claim, however, that the City knew or should have known of previous allegations of criminal misconduct against Sease and other officers in the department. *Id.* at 33–34. They further allege that the City failed to take adequate measures to investigate or prevent such misconduct by its officers, and through this failure, along with a general failure to supervise and train its police officers, maintained "a policy of indifference" that enabled Sease to commit the acts of which Plaintiffs complain. *Id.* at 35–37. This policy, Plaintiffs maintain, was the "moving force" behind Defendants' violations of their constitutional rights. *Id.* at 46.

■ Under certain circumstances, a municipality can be held liable for its failure to properly train and supervise its employees. *City of Canton v. Harris,* 489 U.S. at 387, 109 S.Ct. 1197. Such liability exists only where "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388, 109 S.Ct. 1197. A showing of simple, or even gross, negligence will not suffice to meet the deliberate indifference standard, which requires proof that the City disregarded a known or obvious consequence of its actions or inaction. *Board of County Comm'rs of Bryan County v. Brown,* 520 U.S. at 407, 117 S.Ct. 1382.

■ Deliberate indifference on the part of a city may be established by a showing that the city was aware of, and acquiesced in, a pattern of prior unconstitutional actions of its employees. *Id.* The standard may also be met by showing that the city failed to investigate or punish past unconstitutional conduct, if such failure

may be deemed to "ratify" those acts. *Leach v. Shelby County Sheriff,* 891 F.2d 1241, 1248 (6th Cir.1989).

Plaintiffs here allege a general failure by the City to train and supervise its employees, a general failure to investigate serious allegations of wrongdoing, and a underlying policy of deliberate indifference which served as the motivating force behind Defendant Sease's actions. Since Plaintiffs have stated a viable claim under the requirements of § 1983, motion to dismiss this claim against the City of Memphis is DENIED.

## B. State Law Claims

### 1. Negligence and Gross Negligence

■ Plaintiffs claim that the City of Memphis should be held liable under state law for the criminal actions Officer Sease performed in his capacity as a police officer. They allege that the City knew or should have known from previous complaints that Sease had a history of and propensity for such illegal activity. (2d Am. Compl. ¶ 53–54). In light of this knowledge, the complaint maintains that in failing to "take reasonable precautions to protect its citizens and guests," the City was in breach of its public duty. *Id.* at 55.

■ Tennessee's Governmental Tort Liability Act ("GTLA" or "TGTLA") governs all legal claims brought against a governmental entity or its employees. Tenn.Code Ann. § 29–20–102(1). While counties, municipalities, and other government entities generally enjoy sovereign immunity under the GTLA, § 29–20–205 waives this immunity for negligent acts of government employees under most circumstances. Exempted from this waiver are circumstances in which the injury in question arises out of certain acts, specifically "false imprisonment pursuant to a mittimus from a court, false arrest, malicious

prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights." Tenn.Code Ann. § 29–20–205(2). Thus, for a government entity to be found liable for the intentional tort of a government employee under the GTLA, a plaintiff must prove 1) that an independent act of negligence by the entity proximately caused the intentional tort that resulted in injury, and 2) that the intentional tort causing the injury does not fall within one of the listed exempted actions.

Plaintiffs make a plausible claim of negligence on the part of the City. The negligence they allege is not that of a single employee, but a broader, system-wide phenomenon, manifested most prominently in an alleged failure to investigate serious complaints against Officer Sease. The assertion that such negligence is causally related to Officer Sease's alleged misdeeds is equally plausible.

The final step in determining whether Plaintiffs have made a cognizable legal claim is determining what intentional tort(s) caused Plaintiffs' injuries. As injuries, Plaintiffs claim mental suffering, humiliation, loss of property and income; and immediate shock and fear as a result of the outrageous conduct of Defendant Sease. (2d Am. Compl. ¶¶ 60–61). The psychological injuries listed are presumably traceable to the alleged illegal stop and search of the plaintiffs and their vehicle, and their alleged false imprisonment. The financial loss is most obviously linked to the alleged robbery of Plaintiffs' cash. Most, if not all, of these alleged wrongs fall outside of the wrongs exempted from suit in Tenn. Code Ann. § 29–20–205(2).

Defendants argue that although Plaintiffs assert various sources of injury, the only real source of injury is the alleged violation of their civil rights. (Def's Mot. to Dismiss 2d Am. Compl. at 4). They

assert that since such a claim is exempted under § 29–20–205(2), the City has immunity. *Id.* This attempt at blurring the lines between Plaintiffs' federal civil rights claims under § 1983 and the separate common law negligence claims fails. Plaintiffs' claims of robbery and false imprisonment cannot legitimately be swept under the rug of "civil rights" claims. To adopt this approach would be to take a step backwards to the "overly broad application of the intentional tort exception" discredited by the Tennessee Supreme Court in *Limbaugh v. Coffee Medical Center,* 59 S.W.3d 73, 84 (Tenn.2001). Defendants' motion to dismiss Plaintiffs' negligence claims is DENIED.

### 2. Negligence *Per Se*

■ Plaintiffs allege liability of both Defendants under a theory of negligence *per se.* (2d Am.Compl. ¶ 56–59). Plaintiffs claim that Defendant Sease's violation of a long list of criminal statutes amounts to negligence *per se* because these violations directly and foreseeably caused Plaintiffs' injuries. *Id.* at 56. The complaint further avers that the City of Memphis is indirectly liable for these intentional acts by its employee under Tenn.Code Ann. §§ 29–20–202 and 205. *Id.* at 58.

■ The doctrine of negligence *per se* permits a plaintiff to satisfy the breach element of a negligence action by substituting the violation of a statutorily imposed duty for the reasonable person standard. *Cook By and Through Uithoven v. Spinnaker's of Rivergate, Inc.,* 878 S.W.2d 934, 937 (Tenn.1994) To establish negligence per se, one has to show that the statute that was violated was designed to impose a duty or prohibit some act for the benefit of a person or the public. *Smith v. Owen,* 841 S.W.2d 828, 831 (Tenn.Ct.App. 1992). The injured party must also be within the class of persons that the statute,

ordinance, or regulation was meant to protect. *Id.*

Each of the criminal offenses in Plaintiffs' list of alleged wrongs by Officer Sease corresponds to one or more intentional torts, actionable in its own right. Plaintiffs fail, however, to connect these wrongs to any complaint of negligence, or failure to exercise due care, on the part of the officer. Since the doctrine of negligence *per se* is inapplicable to the alleged actions of Defendant Sease, Defendants' motion to dismiss is granted and Plaintiffs' negligence *per se* claim against Sease is hereby DISMISSED.

As discussed in the section above, Plaintiffs present a colorable claim of negligence against the City of Memphis. However, since Plaintiffs present no allegation of direct statutory or regulatory violation by the city, the doctrine of negligence *per se* is inapposite to establishing their negligence claim. Consequently, Defendants' motion is granted and Plaintiffs' negligence *per se* claim against the City of Memphis is DISMISSED.

**3. Jurisdiction**

 In addition to urging dismissal for failure to state a claim, Defendants maintain that the Court should decline supplemental jurisdiction over Plaintiffs' state law claims. Defendants' jurisdictional argument relies on language in Title 28

U.S.C. § 1367(c). (Def's Mot. to Dismiss 2d Am. Compl. at 3). This provision grants district courts discretion to decline to exercise supplemental jurisdiction over a claim in "exceptional circumstances" where "compelling reasons" warrant declining jurisdiction. Defendants assert that such exceptional circumstances exist in the instant case because the Tennessee legislature has expressed a clear preference that claims under the Tennessee Governmental Tort Liability Act be handled exclusively by its own state courts. *Id.* Defendants find this legislative intent expressed in Tenn.Code Ann. 29–20–307, which provides that the state circuit courts shall have "exclusive original jurisdiction" over GTLA claims, except in certain specified circumstances, in which case the General Sessions Court is given concurrent jurisdiction.[3] *Id.* Finally, Defendants cite several federal court decisions holding either that federal courts lack jurisdiction over GTLA claims entirely or that federal courts should exercise their statutory discretion in declining jurisdiction over such claims. *Id.* at 3–4.

The Sixth Circuit Court has twice upheld the lower courts' dismissal of supplemental GTLA claims as a proper exercise of judicial discretion pursuant to § 1367(c). *See Gregory v. Shelby County, Tennessee,* 220 F.3d 433, 446 (6th Cir.2000)[4]; *Maxwell v. Conn,* 893 F.2d 1335 (6th Cir.1990)

**3.** "The circuit courts shall have exclusive original jurisdiction over any action brought under this chapter and shall hear and decide such suits without the intervention of a jury, except as otherwise provided in § 29–20–313(b); provided, that in counties having a population of more than six hundred thousand (600,000) according to the 1970 federal census or any subsequent federal census, the general sessions court shall have concurrent original jurisdiction with such circuit court over any action brought under this chapter; and provided further, that the jurisdiction conferred upon the general sessions court by the provisions of this section shall not extend

beyond the jurisdictional dollar limit provided in § 16–15–501(d) for such general sessions courts in civil cases generally." Tenn.Code Ann. § 29–20–307.

**4.** Some have argued that the *Gregory* decision *mandates* dismissal of supplemental TGTLA claims. According to this Court's reading of *Gregory's* holding, however, the Sixth Circuit upheld the lower courts' dismissal of TGTLA claims as an exercise of their discretion, but did not remove that discretion by requiring the courts to decline jurisdiction over all such claims.

(unpublished table decision). For the most part, the Tennessee district courts have followed the precedents established in *Beddingfield v. City of Pulaski, Tenn.*, 666 F.Supp. 1064, 1066–67 (M.D.Tenn. 1987) (holding that federal courts are obligated to decline jurisdiction over pendant GTLA claims, and even if they were not, the court would exercise its discretion to decline jurisdiction in that case); and/or *Spurlock v. Whitley*, 971 F.Supp. 1166, 1185 (M.D.Tenn.1997) ("the exclusivity provision of the TGTLA provides a compelling reason for this Court to decline supplemental jurisdiction of the TGTLA claim").

This Court has sent mixed signals on the matter of pendant GTLA claims in the past. *See Malone v. Fayette County, Tenn.*, 86 F.Supp.2d 797, 801–02 (W.D.Tenn.2000) (holding that the provisions of the GTLA do not preclude the court's supplemental jurisdiction and declining to dismiss on 1367(c) grounds); *contra Cunningham v. Reid*, 337 F.Supp.2d 1064, 1069–70 (W.D.Tenn.2004) (holding that the Court lacked jurisdiction over pendant GTLA claims, and, alternatively, exercising its discretion in declining to exercise supplemental jurisdiction over such claims). The *Malone* decision contains the most exhaustive and probing analysis of the full spectrum of legal issues at stake to date and it is to that opinion's analysis and conclusions that the Court, in large part, returns today.

The Supreme Court has recognized the constitutional validity of supplemental jurisdiction since 1824, when it held that "when a question to which the judicial power of the Union is extended by the constitution, forms an ingredient of the original cause, it is in the power of Congress to give the Circuit Courts jurisdiction of that cause, although other questions of fact or of law may be involved." *Osborn v. Bank of the United States*, 9 Wheat. 738,

22 U.S. 738, 823, 6 L.Ed. 204 (1824). The constitutional basis for such jurisdiction stems from Article III's authorization for federal courts to decide "cases" and "controversies." A case or controversy includes all claims arising from a given set of facts and thus a federal court may decide the entire matter, even though only part of it meets the requirements for federal court jurisdiction. *See Siler v. Louisville & N.R. Co.*, 213 U.S. 175, 191, 29 S.Ct. 451, 53 L.Ed. 753 (1909) (holding that the court had "the right to decide all questions in the case," including state and local ones).

Although Congress granted no express statutory authority for the exercise of supplemental jurisdiction until 1990, a patchwork of judicially-created doctrines has long provided the basis for federal court authority over supplemental state law claims. In *United Mine Workers of America v. Gibbs*, the Supreme Court established the unifying principle that jurisdiction over a state claim may be exercised by a federal court when there is a federal claim properly before it and the state and federal claims "derive from a common nucleus of operative fact." 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218.

Congress codified the *Gibbs* doctrine in the Judicial Improvements Act of 1990. 28 U.S.C. § 1367. Under the statute, when a U.S. district court has original jurisdiction over a claim, the court shall have supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). This statutory conferral of jurisdiction is in mandatory terms, but § 1367(c) of the statute gives the court discretion to decline such jurisdiction in certain "exceptional circumstances."

As the Court noted in *Malone*, the *Beddingfield* decision, which many subsequent court opinions have relied upon, is "premised upon a misreading of Gibbs and a misunderstanding of the source of the Court's supplemental jurisdiction power." *Malone*, 86 F.Supp.2d at 801. *Beddingfield* acknowledges that no state statute can defeat a jurisdictional grant by the Constitution. 666 F.Supp. at 1066–67. However, the opinion treats supplemental jurisdiction as an extra-constitutional power, and as such one that "cannot stand in the face of limitations upon suability specified in Tenn.Code Ann. § 29–20–307." *Id.* at 1067.

Supplemental jurisdiction is grounded, implicitly, in Article III of the Constitution, and, explicitly, in federal statutory law. Under the Supremacy Clause, the U.S. Constitution and federal law make up the "supreme Law of the Land." "[A] state statute is void to the extent that it actually conflicts with a valid federal statute." *Edgar v. MITE Corp.*, 457 U.S. 624, 631, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982). A conflict will be found either where compliance with both federal and state law is impossible or where the state law stands as an obstacle to the accomplishment of the purposes and objectives of Congress. *Id.*

State legislatures are powerless to impose jurisdictional constraints upon the federal judiciary. Whatever the intent of the Tennessee legislature may have been in enacting the Governmental Tort Liability Act, the authority of the federal courts to appropriately exercise jurisdiction over supplemental state law matters remains undiminished.[5] To rule otherwise would be to imply that a state could nullify two centuries of case law and an entire federal statute on the subject of supplemental jurisdiction by merely expressing a preference that all state law controversies be kept "in-house."

In *Spurlock v. Whitley*, a district court case decided after enactment of § 1367, the court built upon *Beddingfield's* reasoning to conclude that the exclusivity language in the TGTLA provides a "compelling reason for declining jurisdiction," pursuant to § 1367(c)(4). 971 F.Supp. 1166, 1185 (M.D.Tenn.1997). As it did in *Malone*, this Court respectfully declines to follow *Spurlock* with regard to this conclusion. *See Malone*, 86 F.Supp.2d 797, 802. Dismissal of Plaintiffs' state law claims would necessitate duplicative litigation which would be wasteful of judicial and litigant resources. Even if the Tennessee legislature had stated a clear preference that GTLA claims be heard in state court, such a preference would not create a sufficiently exceptional circumstance to warrant dismissal of Plaintiffs' state claims under § 1367(c)(4).

## IV. CONCLUSION

For the reasons set forth herein, Defendants' motion to dismiss Plaintiffs' federal law claims is **DENIED** as to all Defendants.

---

5. It is far from apparent that the Tennessee legislature intended any such preemptive effective on the federal courts. Read in the context of § 29–20–307 as a whole (*see* FN 3), the words "exclusive original jurisdiction" appear to pertain to the relationship between the state circuit courts and the general sessions courts, and have no bearing on federal court jurisdiction. The Tennessee Code describes an intricate division of labor among the various trial courts, including the circuit, chancery, and general sessions courts. The code contains seventeen provisions containing the phrase "exclusive original jurisdiction," according to a Westlaw search of the current code, none of which pertain to the state courts' relationship to the federal judiciary. Viewed in the context of this broader statutory framework, interpreting these words as conveying the exclusion of federal court jurisdiction seems all the more out of place.

Defendants' motion to dismiss Plaintiffs' supplemental state law claims is **DENIED** as to claims of negligence and gross negligence on the part both Defendants, and **GRANTED** as to claims of negligence *per se* on the part of both Defendants.

**IT IS SO ORDERED** this 7th day of July, 2006.